THE STATE, GEORGE W. PATTERSON, Jr., RELATOR, DE-
FENDANT IN ERROR, v. CHARLES E. CLOSE, DEFEND-
ANT, PLAINTIFF IN ERROR.

Argued December 2, 1912—Decided March 3, 1913.

1. Chapter 34 of *Pamph. L.* 1902, *p.* 65, is entitled "An act to re-
duce the number of members of the boards of chosen freeholders
in counties of this state, and to fix the salaries and provide for
the election of the members of said boards," and section 6, as
amended by chapter 257 (*Pamph. L.* 1906, *p.* 537) provides that
"the terms of office of all officers then holding office under ap-
pointment by the board of chosen freeholders existing in any
county at the time of the reorganization of said board under this
act in such county, shall expire with the termination of office
of the members of such previous board as aforesaid, notwith-
standing that such officers may have been appointed for a longer
term; and all offices filled by appointments by such previous
boards shall then become vacant; and the boards of chosen free-
holders constituted or elected under the provisions of this act
shall forthwith, upon their organization, fill the offices hereby
vacated for the term of one year only, and thereafter may appoint
for the term of two years." *Held*, that the provision changing
the length of terms of county offices which are filled by appoint-
ment of the board was not authorized by the title, and was void
because repugnant to the constitution, article 4, section 7, para-
graph 4, providing that the object of every law shall be expressed
in its title.

2. The title of the act of April 20th, 1909 (chapter 199, page 294),
entitled "An act to amend the title of an act entitled 'An act to
reduce the number of members of the boards of chosen freeholders
in counties of the state, and to fix the salaries and provide for
the election of the members of said boards,' approved March
twenty-sixth, one thousand nine hundred and two," sufficiently
states the object of the legislation.

3. Upon the taking effect of the act of April 20th, 1909 (chapter
199, page 294), amending the title of the act of 1902 (chapter
34, page 65), section 6 of the act of 1902, as amended by chap-
ter 257 (*Pamph. L.* 1906, *p.* 537), became for the first time a
valid and constitutional enactment.

4. In November, 1905, Monmouth county adopted the act of 1902.
*Pamph. L.,* *p.* 65, *ch.* 34. In November, 1906, the county
elected thereunder a board of chosen freeholders, which organ-
ized January 1st, 1907. In November, 1908, it elected there-
under a second board, which organized January 1st, 1909, and
on January 1st, 1910, this board elected the relator clerk of the
board for "the term prescribed by law." *Held*, that the pro-

vision of section 6 of the act of 1902, as amended by chapter 257 (*Pamph. L.* 1906, *p.* 537), that "the boards of chosen freeholders constituted or elected under the provisions of this act shall forthwith, upon their organization, fill the offices hereby vacated *for the term of one year* only," and which provision came into existence for the first time upon the taking effect of the act of April 20th, 1909 (chapter 199, page 294), was not applicable to the relator. He was elected clerk for "the term prescribed by law," and that was two years.

5. Courts will take judicial notice of the census taken under state authority and of the population of counties as determined by it.

---

On *quo warranto.* On error to the Supreme Court, whose opinion is reported in 53 *Vroom* 160.

For the plaintiff in error, *Ruliff V. Lawrence.*

For the defendant in error, *Alan H. & Theodore Strong* (*Alan H. Strong* on the brief).

The opinion of the court was delivered by

TRENCHARD, J. This writ of error brings up for review the judgment of the Supreme Court adjudging that the relator is entitled to the office of clerk of the board of chosen freeholders of the county of Monmouth.

The information avers that at the annual stated meeting of the board, on January 1st, 1910, the office of clerk of the board was vacant, and that the board thereupon appointed the relator to fill it for "the term prescribed by law;" that he took the oath and gave the bond required by the statute and entered upon the duties of his office, and continued to discharge the same until May, 1911, at which time and during the continuance of the term of the relator the defendant took possession of the office and since then has excluded the relator and usurped, intruded into and unlawfully held, used and exercised said office.

The defence set up by the plea is that the term of office of the relator had expired prior to May, 1911; that the defendant was duly appointed by the board to the office of clerk

of the board at the expiration of the relator's term, and that his entry into the office at the time and in the manner set out in the information was under and by virtue of that appointment.

The relator demurs to the plea.

In support of the allegation of the plea that the term of office of the relator had expired at the time of the appointment of the defendant to the office, the pleader appeals to section 6 of chapter 34 (*Pamph. L.* 1902, *p.* 65) being an act entitled "An act to reduce the number of members of the boards of chosen freeholders in counties of this state, and to fix the salaries and provide for the election of the members of said boards."

This act was adopted by the voters of Monmouth county in November, 1905, in accordance with its provisions.

Further, in pursuance of the act a board of five members was elected in November, 1906, which board organized on January 1st, 1907.

The sixth section of the act of 1902, as amended by chapter 257 (*Pamph. L.* 1906, *p.* 537), reads as follows (so far as concerns this case) :

"The terms of office of all officers then holding office under appointment by the board of chosen freeholders existing in any county at the time of the reorganization of said board under this act in such county, shall expire with the termination of office of the members of such previous board as aforesaid, notwithstanding that such officers may have been appointed for a longer term; and all offices filled by appointments by such previous boards shall then become vacant; and the boards of chosen freeholders constituted or elected under the provisions of this act shall forthwith, upon their organization, fill the offices hereby vacated for the term of one year only, and thereafter may appoint for the term of two years; provided," &c.

The Supreme Court properly held that the provision of that section changing the length of terms of county offices which are filled by appointment of the board was not authorized by

the title, and was void because repugnant to constitution, article 4, section 7, paragraph 4, providing that the object of every law shall be expressed in its title.

In the Supreme Court it was contended by the defendant that such invalidity of section 6 of the act of 1902 was cured by the amendment to the act passed April 20th, 1909. *Pamph. L., p.* 294. The title of the amendment is "An act to amend the title of an act entitled 'An act to reduce the number of members of the boards of chosen free-holders in counties of this state, and to fix the salaries and provide for the election of the members of said boards,' approved March twenty-sixth, one thousand nine hundred and two." The body of the amendment reads as follows: "The title of the act entitled 'An act to reduce the number of members of the boards of chosen freeholders in counties of this state, and to fix the salaries and provide for the election of the members of said boards,' approved March twenty-sixth, one thousand nine hundred and two, is hereby amended so as to read as follows: 'An act to reorganize the boards of chosen freeholders of the several counties of this state, reducing the membership thereof, fixing the salaries, and providing for the election and terms of office of the members, and also for the appointment and terms of office of officers appointed by such boards.' "

The Supreme Court was constrained by the authority of *Sawter* v. *Shoenthal,* 52 *Vroom* 197, to hold that the act of 1909 was not effectual to cure the invalidity of section 6 of the act of 1902. But since the rendition of the opinion in the court below the case upon which it relied has been reversed in this court. 53 *Id.* 499. Upon the authority of that case in this court we hold that the title of the act of April 20th, 1909, sufficiently states the object of the legislation.

Upon the authority of the same case we also hold that, upon the taking effect of the act of 1909, section 6 of the act of 1902 became for the first time a valid and constitutional enactment.

The act of 1909 by its terms took effect April 20th, 1909.

To all intents and purposes the situation was as if section 6 had been first passed by the legislature on April 20th, 1909.

Prior to that time, however, all of the act of 1902, except section 6, had taken effect in the county of Monmouth by virtue of its adoption in November, 1905, and the election of a board of five members in November, 1906, which organized on January 1st, 1907.

A second board was elected under that act in November, 1908, which organized January 1st, 1909.

The question is, Under the circumstances stated, how much of section 6 became operative on April 20th, 1909, in the county of Monmouth?

It is evident that all that part of section 6 which provided for the termination of the terms of office of officers *"then holding office under appointment by the board of chosen freeholders existing in any county at the time of the reorganization of said board under this act,"* and for the appointment of officers in their places by the new board upon their organization, never could take effect in Monmouth county. The time to which that part of section 6 relates had gone by so far as Monmouth county is concerned before section 6 came into existence constitutionally.

The occasion contemplated by this part of the act is designated with entire certainty. It is *"the time of the reorganization of said board under this act in such county."* The terms of office of all officers *then* holding office *under appointment by the board of chosen freeholders existing in any county at the time of such reorganization* are to expire *"with the termination of office of the members of such previous board,"* and all offices *"filled by appointment by such previous boards"* shall *then* become vacant, and the boards constituted or elected "under the provisions of this act shall forthwith, upon their organization, fill the offices *hereby vacated* for the term of one year only, and thereafter may appoint for the term of two years."

The act of 1902 not only reduced the membership of boards of freeholders in counties adopting the act, but provided for the election of the members by the county at large, whereas

under the old system they were elected by wards and townships.

Merely as incidental to these changes in the system it was designed that the board first to·be elected under the new *régime* should fill the office *de novo.*

In other words, the purpose was that there should be "a clean sweep," not only of the boards elected under the old system, but of their appointees.

Such was the whole purpose of section 6. Manifestly it could not apply in any county where the reorganization of the board under the act had taken place before section 6 became valid by the amendment of title, and where the conditions required for its operation did not exist.

When section 6 became operative for the first time on April 20th, 1909, the conditions required for its operation did not exist in Monmouth county.

· The only time when it could have operated, *"the time of the reorganization of said board under this act in such county,"* had already passed on January 1st, 1907.

On April 20th, 1909, there were no officers holding office under appointment by a board holding office at the time of the reorganization of the board under the act. There were at that time no terms of office of such officers which could expire with the termination of office of the members of such previous board.

There were, therefore, no such offices to be vacated by the act.

The foundation of the defendant's case is the idea that section 6 must operate as an entirety upon the next organization of the board after the section had become valid—as though the purpose had been to bring about a change in the officers appointed by the board as in itself an object instead of a mere incident to the changes affecting the board itself which were the main purposes of the act.

Consistently with this idea, he contends that the term of office for which the relator was appointed on January 1st, 1910, the date of reorganization of the board next after section 6 took effect, was for one year only.

But it is only *"the offices hereby vacated"* that the act says shall be filled for the term of one year only. It was only upon the occasion of the first reorganization under the act, when the appointees of the boards elected under the old system were intended to have been legislated out of office, that the provisions for a term of one year was applicable. The term of the relator, therefore, did not originate in any vacancy created by the act.

The information alleges that at the annual stated meeting of the board on January 1st, 1910, the office was vacant, the term of office of the previous incumbent having expired, and the board appointed the relator to fill it for "the term prescribed by law;" that he entered upon the duties of his office and continued to discharge the same until the defendant, in May, 1911, took possession of the office and has since excluded the relator therefrom. There is no denial in the plea of any of these allegations.

The term for which the relator was appointed was "the term prescribed by law."

The term prescribed by law was two years. The language of section 6 of the act of 1902, as amended by the act of 1906, is "and thereafter may appoint for the term of two years." The question whether the language is mandatory or discretionary does not now press for solution. If mandatory, of course, the term is two years. If discretionary, the result is the same. *Comp. Stat.*, p. 476, § 8, provides that the corporation (the board of chosen freeholders) may annually elect some fit person, being a resident in the county and not a member of such corporation, for their clerk, &c. And *Comp. Stat.*, p. 533, § 205 (*Pamph. L.* 1888, p 464), provides that the solicitor or attorney and clerk of the boards of chosen freeholders in the counties of the second class of this state elected after the passage of that act, shall hold their office for the term of two years. This act was recognized as effective in fixing the term of office of solicitor in *Heaviland* v. *Chosen Freeholders*, 35 *Vroom* 176, 178.

The plea alleges that the county of Monmouth in 1905 contained, and since has continued to contain, a population

of between fifty thousand and one hundred thousand inhabitants. It was and is, therefore, a county of the second class. *Pamph. L.* 1901, *p.* 250.

Moreover, by the state census of 1900 the population of Monmouth county is eighty-two thousand and fifty-seven. See *Legislative Manual.*

The court will take judicial notice of the census taken under state authority and of the population of counties as determined by it. 16 *Cyc.* 870; *Adams* v. *Elwood,* 176 *N. Y.* 106; *Board of Commissioners* v. *Garty,* 161 *Ind.* 464.

The result is that the judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, TREACY, JJ.    10.

*For reversal*—None.